238 P.3d 1217 (2010)
RAINIER VIEW COURT HOMEOWNERS ASSOCIATION, INC., a Washington nonprofit corporation, Appellant,
v.
Edward W. ZENKER and "Jane Doe" Zenker, individually, and the marital community they together compose, Respondents.
No. 39187-2-II.
Court of Appeals of Washington, Division 2.
September 8, 2010.
*1218 David James Britton, Britton & Russ, PLLC, Tacoma, WA, for Appellant.
James R. Tomlinson, Attorney at Law, Tacoma, WA, for Respondents.
QUINN-BRINTNALL, J.
¶ 1 Rainier View Court is a residential development that was designed for construction in three phases. The Rainier View Court Homeowners Association, Inc. (HOA), comprising homeowners in phases I and II, appeals the trial court's summary judgment order in favor of Edward Zenker, a managing member of the developer of Rainier View Court. The HOA contends that the trial court erred when it granted Zenker's motion for summary judgment because it improperly relied on extrinsic evidence to determine his intent to grant future residents of phase III a right to use a park located in the phase I plat. Specifically, the HOA contends that the phase I plat is unambiguous and does not grant an easement right for future phase III residents to use the park. The HOA also contends that the trial court erred by relying on the Pierce County hearing examiner's decision approving the Rainier View Court preliminary plat as binding legal authority and by refusing to address the HOA's breach of fiduciary duty claims against Zenker. We affirm.

FACTS

Background Facts
¶ 2 Zenker is a managing member of Rainier View Court, LLC, which is the developer of the Rainier View Court plat, a gated community. Rainier View Court is an approximately 30-acre development located within a high-density residential district zone in Spanaway, Washington. The Pierce County hearing examiner approved the preliminary plat for Rainier View Court for development in three phases. Phases I and II consist of 179 residential lots for single-family homes; phase III consists of a single lot for 64 multifamily units.
¶ 3 The approved Rainier View Court preliminary plat map depicts a park, labeled Tract "B," which is located within phase I but which adjoins all three phases of the plat. The hearing examiner's decision indicates that only the design of the plat as a whole, including the single-family homes in phases I and II and the multifamily units in phase III, along with the open spaces achieved in part by the park, satisfies the requirements for development within the high-density residential district zone.
¶ 4 Specifically, the hearing examiner made the following findings and conclusions:
FINDINGS:
....
5. ... The applicant requests preliminary plat and planned development district (PDD) approval to allow subdivision of the site into 179 single family residential *1219 lots and one lot containing 64 multifamily residential units for a total of 243 dwelling units on 180 lots....
6. ... All properties for substantial distances in all directions from the site are located in the urban growth area and residential areas are designated either Moderate Density Single Family (MSF) or High Density Residential District (HRD). The Council designated the entire site and properties abutting the northeast and southwest corners as HRD....
7. Section 18A.35.020(B) of the Pierce County Code (PCC) sets forth the Density and Dimension Tables which authorize a maximum base density of 20 dwelling units per acre and a maximum density of 25 dwelling units per acre upon approval of a PDD in the HRD classification.... Thus, the applicant, without submitting to the public hearing process, could construct apartments at a density of 20 dwelling units per acre on the site. However, subdivision of the site into individual lots requires approval of a preliminary plat and a public hearing.
8. ... Access to the single family residential portion of the plat is provided from both 176th St. E. and 22nd Ave. E. The multi-family lot will have its own access onto 22nd. The plat map shows a storm drainage tract adjacent to 22nd Ave. E. and a community park in the southeast portion of the plat. Amenities include street trees on internal plat roads, sidewalks/paved pedestrian pathways along one side of internal plat roads and on 176th St. and 22nd Ave., and a six foot high, solid board fence around the perimeter.
9. ... The Land Use Element of the comprehensive plan provides that the overall density in [urban growth areas (UGAs)] should be high enough to provide urban level facilities and services at a reasonable cost per unit, thereby making affordable housing choices available. The applicant proposes an overall density of 8.13 dwelling units per acre, slightly over the minimum six dwelling units per acre required by the HRD zone, and substantially less than the base density of 20 dwelling units per acre authorized by the HRD zone....
10. The plat proposes 2.76 acres of open space in the nature of a community park, open space areas, and a storm drainage tract which calculates to 9% of the site. Even though the total amount of open space is less than normal, the reduced density and single family residential yards will provide additional open space. The applicant proposes to improve Tract B park with an outdoor play structure for children, a sport court with basketball hoop, benches, and picnic tables.... The plat makes appropriate provision for open spaces, parks and recreation, and playgrounds.
....
CONCLUSIONS:
....
5. The proposed preliminary plat will serve the public use and interest by providing an attractive location for a combined single family and multifamily subdivision, and therefore should be approved subject to the following conditions:
....
2. A landscape plan, prepared by a Washington State registered landscape architect or Washington State certified professional nurseryman, shall be submitted to Planning and Land Services for review and approval, prior to final plat approval.... The landscape plan shall also include the park area, Tract B. All planting shall be installed prior to final plat approval.
....
30. The applicant shall improve the community park in accordance with Exhibit "4".
2 Clerk's Papers (CP) at 294-301.
¶ 5 Pierce County Planning and Land Services approved the final plat for phase I, which was recorded on September 11, 2002. The dedication on the phase I final plat provides,

*1220 We the undersigned owners of the herein described property dedicate these lots to the purchasers thereof. All roads are private and are not dedicated to the public. Each lot owner shall have an easement for ingress, egress and utility purposes and any other purposes not inconsistent with its use as a roadway over and across all the private roads shown on the plat....
....
We hereby convey an easement for ingress, egress and utilities over, under, and across the private roads as shown hereon to the present and future lot owners of existing and future phases of the Plat of Rainier View Court, for all purposes not inconsistent with the use of a private road and utilities easement.
2 CP at 393.
¶ 6 The recorded plat for phase I identifies Tract "B" as a "park," which is bordered by phase I on the northeast corner, by phase II on the south and the east, and by phase III on the northwest corner. Note 9 of the recorded phase I plat states, "All lot owners shall have a 1/86th undivided interest in Tracts "B", "E" and "F" for taxing purposes with said tracts to be deeded to the Rainier View Court Homeowner's Association for ownership." 2 CP at 399.
¶ 7 On September 11, 2002, Rainier View Court, LLC recorded a declaration of protective covenants, easements, conditions, and restrictions (CCRs). The CCRs do not expressly reference any easement rights in the Tract "B" park. The CCRs provide for the creation of the HOA. Zenker and his wife served as two of the three initial directors of the HOA; the CCRs stated that lot owners shall elect a new HOA board of directors after 100 percent of the lots have been sold.[1]
¶ 8 On April 12, 2005, Zenker signed a letter titled "2004 Summary for Rainier View Court Homeowners Association," which indicated that 100 percent of the lots in phases I and II had been sold. 3 CP at 445. Although 100 percent of the lots in phases I and II had been sold as of that date, Zenker and his wife remained as directors of the HOA until October 2007, when HOA members held a special meeting to demand that Zenker turn over HOA governance to the lot owners.
¶ 9 In July 2007, a Rainier View Court resident contacted Pierce County Planning Department employee Robert Jenkins to express her objection to future residents of phase III using the Tract "B" park. Jenkins discussed the resident's complaint with Pierce County Deputy Prosecuting Attorney Jill Guernsey. Because Guernsey was concerned that, contrary to the original intent of the planned community, the lot owners in phases I and II might try to exclude future residents of phase III from using the park, she advised Jenkins to work with Zenker to ensure that phase III residents would have access to the park.
¶ 10 On August 23, 2007, while still the HOA director, Zenker granted to residents of phase II and future residents of phase III an easement for use of the Tract "B" park, which stated in part,
Rainier View Court Homeowners Association, a Washington non-profit corporation, Grantor, grants to the owners of Rainier View Court Phase II and Rainier View Court Phase III, their guests, invitees, successors and assigns, a perpetual nonexclusive easement in all of Tract "B" of Rainier Court, a P.D.D.Phase I, as show [sic] on page 6 of the plat recorded September 11, 2002, under Pierce County Auditor's Fee No. 200209115003, for ingress, egress, and use of the same as a community park, subject to any covenants, conditions and restrictions of record.
2 CP at 283.

Procedural Facts
¶ 11 The HOA filed a complaint for declaratory relief, alleging that Zenker lacked authority to grant residents of phase II and future residents of phase III easement rights *1221 in the Tract "B" park and asking the court to declare the recorded easement null and void. The HOA's complaint also alleged that Zenker breached his fiduciary duty to the HOA by granting the easement.
¶ 12 Zenker moved for summary judgment, contending that the phase I plat, together with the hearing examiner's decision, granted residents in all three phases easement rights to use the community park. He thus contended that his later grant of easement rights in the park to phase II and III residents was superfluous. The trial court held a hearing on Zenker's summary judgment motion on March 27, 2009. The trial court entered its written order granting summary judgment in favor of Zenker. The trial court's order states in part,
[T]he recorded Plats of Rainier View Court, a PDD, viewed in light of the ... hearing examiner's decision, and all surrounding circumstances, granted the owners and/or residents in phase 3 of the Plat an easement to use the park designated on the face of the Plat as Tract B for recreational purposes.
3 CP at 495.
¶ 13 The HOA moved for reconsideration, which the trial court denied at an April 24, 2009 hearing. The HOA timely appeals.

ANALYSIS
¶ 14 The HOA first contends that the trial court erred by granting summary judgment in favor of Zenker because it improperly relied on surrounding circumstances to ascertain his intent to grant future phase III residents an easement right to use the Tract "B" park. The HOA argues that the trial court's reliance on the surrounding circumstances was erroneous because the phase I plat is unambiguous and does not contain any specific language granting future phase III residents a right to use the park. We disagree.
¶ 15 The interpretation of an easement is a mixed question of law and fact. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 880, 73 P.3d 369 (2003). What the original parties intended is a question of fact and the legal consequence of that intent is a question of law. Sunnyside Valley, 149 Wash.2d at 880, 73 P.3d 369. We review a trial court's findings of fact under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a fair-minded person that the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000). We review questions of law and conclusions of law de novo. Veach v. Culp, 92 Wash.2d 570, 573, 599 P.2d 526 (1979).
¶ 16 Easements are interests in land. McPhaden v. Scott, 95 Wash.App. 431, 434, 975 P.2d 1033 (citing Bakke v. Columbia Valley Lumber Co., 49 Wash.2d 165, 170, 298 P.2d 849 (1956)), review denied, 138 Wash.2d 1017, 989 P.2d 1141 (1999). Because they are interests in land, express easements must comply with the statute of frauds, which requires that "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed." RCW 64.04.010. A party may create a private easement by including the grant in a plat. RCW 58.17.165;[2]M.K.K.I., Inc. v. Krueger, 135 Wash.App. 647, 653, 145 P.3d 411 (2006), review denied, 161 Wash.2d 1012, 166 P.3d 1217 (2007). No particular words are necessary to create an easement so long as the language used shows an intent to grant with terms that are certain and definite. McPhaden, 95 Wash.App. at 435, 975 P.2d 1033.
¶ 17 We determine the original parties' intent to an easement from the instrument as a whole. Sunnyside Valley, 149 Wash.2d at 880, 73 P.3d 369. If the plain language of the instrument is unambiguous, we will not consider extrinsic evidence. Sunnyside Valley, 149 Wash.2d at 880, 73 P.3d 369 (citing City of Seattle v. Nazarenus, 60 Wash.2d 657, 665, 374 P.2d 1014 (1962)). If *1222 an ambiguity exists, we may review extrinsic evidence to show the original parties' intent, the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct or admissions. Sunnyside Valley, 149 Wash.2d at 880, 73 P.3d 369 (citing Nazarenus, 60 Wash.2d at 665, 374 P.2d 1014). "A written instrument is ambiguous when its terms are uncertain or capable of being understood as having more than one meaning." Murray v. W. Pac. Ins. Co., 2 Wash.App. 985, 989, 472 P.2d 611 (1970).
¶ 18 The HOA asserts that, because the final phase I plat map does not contain any explicit language granting future residents of phase III easement rights to use the Tract "B" park, the trial court erred by relying on surrounding circumstances to ascertain the grantor's intent. But no particular words are necessary to create an easement, and we ascertain the grantor's intent from the instrument as a whole. Sunnyside Valley, 149 Wash.2d at 880, 73 P.3d 369; McPhaden, 95 Wash.App. at 435, 975 P.2d 1033. Examining the phase I plat as a whole, it is apparent that an ambiguity exists as to the future phase III residents' right to use the Tract "B" park.
¶ 19 First, the dedication on the phase I plat states, "[T]he undersigned owners of the herein described property dedicate these lots to the purchasers thereof." 2 CP at 393. At least one tenable interpretation of this provision is that those who own or purchase lots in phase I, phase II, or phase III also receive an interest in the Tract "B" park.
¶ 20 Second, the phase I plat map depicts a "park" that is centered between the residential lots in phase I and the proposed phase II and III plats. Although the park depicted in the phase I plat does not expressly grant to any Rainier View Court residents an easement right in the park, the dedication on the phase I plat states,
We hereby convey an easement for ingress, egress and utilities over, under and across the private roads as shown hereon to the present and future lot owners of existing and future phases of the plat of Rainier View Court, for all purposes not inconsistent with the use of a private road and utilities easement.
2 CP at 393 (emphasis added). Because phase II and III residents have direct access to existing county roads from their respective plats, the private road easements conveyed in the phase I dedication serve no other practical purpose then to allow phase II and III residents access to the park.
¶ 21 Here, the phase I plat is ambiguous as to phase III residents' rights to use the park based on the following: (1) the grantor's dedication of "lots to the purchasers thereof," (2 CP at 393); (2) phase III residents' explicit right to use private roads in phase I; (3) the park's location bordering all three phases of development; (4) references to the future phases of development; and (5) the absence of language on the face of the plat indicating a contrary intent. Accordingly, we look to surrounding circumstances to determine whether the grantor intended to grant future residents of phase III an easement right to enjoy the Tract "B" park.[3]
¶ 22 It is clear that Rainier View Court developers intended to construct the Tract "B" park for the enjoyment of Rainier View Court residents in all three phases of the PDD. Here, the hearing examiner's decision clearly demonstrates that the park was a necessary amenity for the development and approval of the PDD, the hearing examiner *1223 approved the preliminary plat design with the understanding that phase III would meet the density requirement necessary to approve larger phase I lots, and the park would serve residents in all three phases.
¶ 23 Additionally, the hearing examiner's decision demonstrates that Rainier View Court developers designed the mix of single-family homes in phases I and II and the multifamily units in phase III to satisfy the county requirements for development in a HRD zone. In short, but for the proposed single-family homes in phase II, the multifamily units in phase III, and the open space created by a shared community park, the design for the large lots in phase I would not have been approved. Accordingly, the trial court did not err by looking to extrinsic evidence to ascertain the grantor's intent and we affirm the order granting summary judgment in favor of Zenker.
¶ 24 Next, the HOA contends that the trial court erred by relying on the hearing examiner's decision as binding legal authority. We disagree. Here, the trial court's summary judgment order states in part,
[T]he recorded Plats of Rainier View Court, a PDD, viewed in light of the ... hearing examiner's decision, and all surrounding circumstances, granted the owners and/or residents in phase 3 of the Plat an easement to use the park designated on the face of the Plat as Tract B for recreational purposes.
3 CP at 495.
¶ 25 Nothing in the trial court's order indicates that it granted summary judgment in Zenker's favor because it believed that it was bound by the hearing examiner's decision approving the preliminary plat design for Rainier View Court. Instead, the trial court order indicates that it was relying on the hearing examiner's decision only insofar as it evidenced Zenker's design for the entire Rainier View Court and his intent to grant to residents in all phases of the development the right to use the community park. Moreover, even if the trial court improperly relied on the hearing examiner's decision as binding legal authority, which it does not appear to have done, we may sustain a trial court on any correct ground, even one the trial court did not consider. Nast v. Michels, 107 Wash.2d 300, 308, 730 P.2d 54 (1986). Summary judgment in Zenker's favor was appropriate here because the phase I plat, when viewed in light of all surrounding circumstances, granted Rainier View Court residents a right to use the Tract "B" park and, thus, the HOA did not raise any genuine issues of material fact supporting its complaint against Zenker.
¶ 26 Last, the HOA asserts that the trial court erred by failing to address its breach of fiduciary duty claim against Zenker. But the HOA's entire breach of fiduciary duty claim rested on the HOA's allegation that Zenker engaged in self-dealing when, on August 23, 2007, while the HOA director, he granted to future phase III residents an easement right to use the park they did not already have. The HOA's breach of fiduciary duty claim fails because future phase III residents had a right to use the park before Zenker recorded an express easement clarifying the right. Because the HOA did not allege any genuine issues of material fact supporting its breach of fiduciary duty complaint, the trial court did not err by refusing to address this claim when granting summary judgment in Zenker's favor. Accordingly, we affirm.
I concur: BRIDGEWATER, P.J.
ARMSTRONG, J. (Dissenting).
¶ 27 Through a patchwork of phrases taken out of context, the presumed intent of a hearing officer, the absence of language "indicating a contrary intent," and the physical adjoining of properties, the majority attempts to create what the developer did nota written easement in the recorded plat. Majority at 1222. Specifically, the majority finds that the record shows the Rainier View Court developer intended the Tract "B" park to benefit all three phases of the development; thus, reasons the majority, the trial court properly ruled that the developer's plat actually granted an easement for such use. Because the plat lacks any language we could construe to grant park easements to phase III buyers, I dissent.
¶ 28 The majority first seeks an ambiguity in phase I plat language as to the future *1224 phase III residents' right to use the park. It finds one in the grantor's dedication of "these lots to the purchasers thereof," reasoning that one "tenable" interpretation is that phase III purchasers also receive an interest in the park. Clerk's Papers (CP) at 121; Majority at 1222. But the recorded plat depicts only the lots in phase I of the development, lots 1-86. The plat states, "[T]he undersigned owners of the herein described property dedicate these lots to the purchasers thereof." CP at 121 (emphasis added). The definite article "these" refers to the depicted lots and, accordingly, the dedication involves the purchasers of lots 1-86. As to the rights of future phase purchasers, the plat acknowledges only their rights to use the private roads on the phase I plat. Thus, whatever rights the dedication language creates, the rights flow only to phase I purchasers.
¶ 29 The majority next asserts that because phase II and III residents have direct access to existing county roads, the private road easement conveyed in the plat serves no other practical purpose than to allow them access to the park.[4] But nothing in the conveyance of the private roads easement grants any rights to use the park. In fact, the easement is limited to "ingress, egress and utilities over, under, and across the private roads." In contrast, when Zenker attempted to add the missing easement to the recorded plat, he purported to grant phase III residents "a perpetual nonexclusive easement in all of Tract `B' [the park] ... for ingress, egress, and use of the same as a community park." 2 CP at 283. The marked difference in language underscores what was missing from the plat when recordedany mention of a park easement for the benefit of phase III residents. Where the developer unequivocally granted a private road easement, it is inappropriate for us to re-write the document to create an entirely different easement to use the park. See City of Seattle v. Nazarenus, 60 Wash.2d 657, 665, 374 P.2d 1014 (1962). The majority's reasoning that the road easement must have been intended to allow phase III purchasers access to the park is not based on an ambiguity in the plat language; rather, it is pure speculation. We should apply the language as it is plainly written, granting a road easement to allow phase III purchasers to drive, walk, or bicycle through phase I.
¶ 30 Even considering extrinsic evidence of the developer's intent, there is no evidence that the developer actually granted phase III purchasers an easement to use the park. No particular words are required to constitute a grant; instead, any words that clearly show intent to give an easement are sufficient. M.K.K.I., Inc. v. Krueger, 135 Wash.App. 647, 654-55, 145 P.3d 411 (2006) (emphasis added); see also Beebe v. Swerda, 58 Wash. App. 375, 379, 793 P.2d 442 (1990) (noting that words expressing intent to create easement must be sufficiently definite and certain in terms); Brown v. Voss, 105 Wash.2d 366, 371, 715 P.2d 514 (1986) (stating that the extent of the right acquired is determined from the terms of the grant properly construed to give effect to the intention of the parties); Zunino v. Rajewski, 140 Wash.App. 215, 222, 165 P.3d 57 (2007) (holding that the grantor's intent alone is not sufficient to create an easement without words that demonstrate a present intent to grant or reserve an easement). In determining the developer's intent, the majority relies on the hearing examiner's decision, which suggests that the examiner approved the preliminary plat only on condition that the developer grant access rights to the park for residents in all three *1225 phases. There are three problems with this analysis.
¶ 31 First, that the hearing examiner approved the development, in part, with the expectation that the developer would provide phase III residents with park access does not mean that the developer actually granted such an easement. Whether the developer actually created the easement turns upon the language of the plat, not upon what the hearing examiner expected the language to be. Second, the hearing examiner's decision, quoted at length by the majority, was not attached to the recorded plat and nothing in the plat refers to the decision. Thus, a phase I buyer would have no notice that the hearing examiner expected that phase III purchasers would have easements for use of the park. See Gold Creek N. Ltd. P'ship v. Gold Creek Umbrella Ass'n, 143 Wash.App. 191, 202-05, 177 P.3d 201 (2008) (holding that a claimed easement was not enforceable against condominium owners where the real estate contract and declaration did not provide buyers notice of it). Finally, that the developer intended to grant phase III residents rights to use the park at the time the hearing examiner approved the preliminary plat does not establish that the developer actually created the easement in the phase I plat. See Gold Creek N., 143 Wash.App. at 201, 177 P.3d 201 (reasoning that language manifesting an intent create an easement in the future did not create the easement itself).
¶ 32 Instead, the plat grants possessory rights to residents through membership in a homeowner's association. See City of Olympia v. Palzer, 107 Wash.2d 225, 229, 728 P.2d 135 (1986) (recognizing that an easement is a nonpossessory right, distinct from ownership). Note 9 of the phase I plat states, "All lot owners shall have a 1/86th undivided interest in Tracts `B,'[the park] `E' and `F' for taxing purposes with said tracts to be deeded to the Rainier View Court home owner's association [HOA] for ownership." CP at 127. The plat references a declaration of protective covenants, easements, conditions, and restrictions (CCRs), which, among other things, provides for the creation of the HOA. Ownership of a lot is the sole qualification for HOA membership. Thus, in addition to tax liability, phase I residents have a possessory interest in the park as members of the HOA.
¶ 33 The declaration also reserves the option to make phase II of the development subject to the same CCRs. Phase II residents acquired CCR rights and assumed corresponding obligations one year later by a second declaration. By virtue of membership in the HOA, phase II residents acquired ownership interests in the park despite being free from tax liability. But neither the first nor the second declaration grants phase III purchasers the rights and obligations of the CCRs.
¶ 34 Although no particular words are necessary to grant an easement, it is notable that for the roads easement, the developer took care to explicitly grant an easement for usage to existing and future lot owners. In contrast, the plat unambiguously provides that ownership of the park vests in the HOA. Access to the park for phase III residents could have been achieved by reserving the option to incorporate phase III of the development under the CCRs. This would have granted phase III residents a possessory interest in the park through HOA membership. That only phase I and II residents pay HOA dues and pay to maintain the common areas, including the park, further militates against the majority's finding that the developer clearly intended to create park easements for phase III owners. Any oversight by the developers to properly convey the intended ownership interest does not justify our finding an easement by default.
¶ 35 The recorded plat documents contain no language granting phase III purchasers an easement to use the park. And even if we accept that the hearing examiner expected the grant of such an easement and that the developer likely intended residents from all phases to have access, without specific plat language creating an easement, it does not exist. To create one now, as the majority does, is unfair to phase I and II purchasers who purchased with no notice that their rights to use the park would be diluted by easements in favor of 64 other residential units without any obligation to support the HOA's maintenance of the park. Accordingly, *1226 I would reverse the trial court's summary judgment in favor of Zenker.
NOTES
[1] The CCRs state,

The initial Board of Directors shall be appointed by [Zenker], and shall remain in office until either [Zenker] shall terminate said Board or [Zenker] has sold one hundred percent (100%) of its Lots. Thereafter, the Lot Owners, at a general meeting upon notice properly given, shall elect a new Board of Directors.
1 CP at 105.
[2] RCW 58.17.165 provides in part,

Any dedication, donation or grant as shown on the face of the plat shall be considered to all intents and purposes, as a quitclaim deed to the said donee or donees, grantee or grantees for his, her or their use for the purpose intended by the donors or grantors as aforesaid.
[3] The HOA argues that we cannot look to surrounding circumstances to determine the grantor's intent because the phase I plat map unambiguously grants rights in the Tract "B" park to phase I residents only. To support their argument, the HOA points to language on the face of the phase I plat map that explicitly provides that the phase I lot owners have a 1/86th undivided interest in the park for taxing purposes with ownership in the park dedicated to the HOA. The HOA thus argues that the grantor could not have intended to allow residents in all three phases a right to use the park because only phase I residents are liable for the park's taxes. But purchasers of phase I lots were on notice that developers had planned future phases of construction in the PDD. Moreover, purchasers of phase I lots were clearly on notice that at least the phase II lot owners, as members of the HOA, would have an ownership interest in the park despite being free from tax liability. Importantly, the HOA does not contend that phase II lot owners are excluded from accessing the Tract "B" park.
[4] The majority also seeks support for its analysis in (1) the park's location, (2) "references to the future phases of development," and (3) the absence of plat language "indicating a contrary intent." Majority at 1222. As to the latter, the majority cites no authority for the proposition that plat easements can arise automatically unless the plat specifically declares otherwise. Nor does the majority develop its "references to future phases" contention. Presumably, the notion is that any phased development implies that future phases will necessarily acquire easements through the phasing process without stating the easement rights and obligations in any plat document. Again, the majority cites no authority for this. Finally, as to park's location, it would certainly make sense to grant adjoining phases of a development park rights under such circumstances. But we cannot imply such rights from the adjoining alone, and even if we consider the park's location, it cannot override the lack of a written document conveying such an easement. RCW 64.04.010.