# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JORDAN McCULLOUGH, an unmarried individual, | No. 57283-4-II |
| Appellant, | |
| v. | |
| MARK ANDERSON, an unmarried individual; ALL OTHER PERSONS OR PARTIES UNKNOWN CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE REAL ESTATE DESCRIBED HEREIN, | UNPUBLISHED OPINION |
| Defendants. | |

GLASGOW, C.J.—The guardianship estate of Betty Simpson (the estate) owned three abutting parcels of land. Mark Anderson bought two waterfront parcels and secured an ingress, egress, and utilities easement on the third. The easement was necessary for Anderson to be able to access his parcels from the road. The recorded easement stated that the easement was "exclusive."

Jordan McCullough then bought from the estate the third servient inland parcel of land. After Anderson told McCullough that Anderson was the only person with the right to use the easement, McCullough sued Anderson, arguing that the easement did not exclude McCullough as owner of the servient parcel where the easement was situated.

The trial court granted summary judgment to Anderson and dismissed McCullough's complaint. The trial court held that under *Johnson v. Lake Cushman Maintenance Co.*,[1] the

---

[1] 5 Wn. App. 2d 765, 425 P.3d 560 (2018).

language of the easement was ambiguous, and considering extrinsic evidence, there was no genuine issue of fact that Anderson and the estate intended to exclude the owner of the servient estate from the easement. The trial court also awarded Anderson attorney fees and costs under RCW 4.84.185, reasoning that *Johnson* was dispositive and the extrinsic evidence was clear, making McCullough's claim frivolous.

McCullough appeals, arguing that the trial court erred in granting Anderson's summary judgment motion and awarding Anderson attorney fees and costs. We affirm the trial court's summary judgment order dismissing McCullough's complaint, but we reverse the award of attorney fees and costs below because McCullough's action was not frivolous. We also deny Anderson's request for attorney fees on appeal.

FACTS

I. BACKGROUND

The estate owned three abutting parcels of land in Thurston County. The two smaller parcels bordered the water. The largest parcel was situated inland. The inland parcel shared part of its western border with the waterfront parcels. A map is shown below



archived at https://perma.cc/G5PT-SH9P. A paved road, 86th Avenue NE, ran parallel to the inland parcel's northern border. The inland parcel included a gravel driveway that started at 86th Avenue NE, ran along the inland parcel's western edge, and ended at the northeast corner of one of the waterfront parcels.

The estate listed the three parcels for sale. A prospective buyer made an offer on the inland parcel and then rescinded the offer, noting that the driveway to the waterfront parcels encroached on the inland parcel and the situation could cause conflict. As a result, the estate stopped listing the inland parcel for sale. The other two parcels remained available for purchase.

## II. ANDERSON'S PURCHASE AND EASEMENT

Anderson offered to buy the waterfront parcels, but he later reconsidered because part of the driveway to access the parcels was inside the inland parcel. The estate agreed to grant Anderson an easement to access the waterfront parcels. Anderson then purchased the two waterfront parcels.

After Anderson's purchase, the estate hired an attorney to draft the easement. Anderson's attorney and the estate's attorney participated in the drafting process. The first draft of the easement stated, "Grantor desires to grant to Grantee a perpetual, *non-exclusive* easement for ingress, egress, and utilities, over and across" the driveway. Clerk's Papers (CP) at 70 (emphasis added).

After Anderson reviewed the first draft of the easement, his attorney told the estate's attorney that Anderson wanted "an exclusive easement." CP at 62. Anderson's attorney wrote, "Last thing he wants is the upland owner using his easement." *Id.* The estate relented, changing the easement language to make it exclusive and requiring Anderson to indemnify the estate for any cause of action or liability arising out of use of the driveway because the estate would "not have a right to use the easement." CP at 82.

The final easement stated, "Grantor desires to grant to Grantee a perpetual, *exclusive* easement for ingress, egress, and utilities, over and across" the driveway. CP at 75 (emphasis added). The easement contained no express reservation of rights provision benefitting the grantor and no nonexclusive easement provision. The indemnity provision stated that Anderson would indemnify the estate "for, from and against all causes of action, litigation, cost, loss, liability, damage and expense . . . for injury or death to persons . . . and damage to or loss of property . . . arising out of or in any way connected with the use of" the driveway by Anderson and his permittees unless the damages resulted "from the sole negligence of the" estate. *Id.*

The easement also contained an integration clause, which provided that the easement set "forth the entire and complete agreement between the" parties with respect to the easement and that the agreement superseded any "prior agreements, commitments, or representations, express or implied, between the" parties. CP at 76. The easement provided that no provisions would "be construed against or interpreted to the disadvantage of any" party to the easement "by any court . . . by reason of such [p]arty having been deemed to have structured, written, drafted[,] or dictated such provisions." *Id.* And the easement contained a legal description of the area it covered.

The estate recorded the easement with Thurston County.

### III. MCCULLOUGH'S PURCHASE

McCullough first considered purchasing the inland parcel shortly before the estate withdrew the parcel for sale. McCullough continued to monitor the parcel after the withdrawal, eventually hiring a real estate broker to represent him in purchasing the parcel. The real estate broker told McCullough that the estate planned to relist the inland parcel after granting the waterfront parcels' owner an easement for the part of the driveway that was inside the inland

parcel's borders. McCullough then toured the inland parcel. He arrived there using instructions from the listing, which directed him to access the property using the same driveway.

For several months, McCullough's real estate broker continued following up with the estate's listing agent about the inland parcel. The listing agent periodically updated the real estate broker "on the status of . . . the proposed easement and provided an image of the proposed easement survey." CP at 126.

The estate relisted the inland parcel for sale shortly after it recorded the easement. McCullough offered to purchase the inland parcel a few days later. Around the same time, McCullough obtained a copy of the easement. After reading it, McCullough thought "it simply granted access and utility rights . . . across the existing gravel driveway." CP at 102. Nevertheless, he asked his real estate broker to follow up with the listing agent and the estate's title company "regarding the scope and effect of the easement." *Id.* The real estate broker told McCullough that, based on her conversations with the listing agent and the title company, "the easement was 'exclusive' in that it prevented the" waterfront property "from being subdivided in such a way that multiple parcels could then rely on the easement and potentially overburden it." *Id.* The real estate broker also said, "On any easement, the person who owns the land can always use the land without restriction." CP at 120. McCullough's purchase of the inland parcel closed later that year.

IV. MCCULLOUGH'S LAWSUIT

Sometime after McCullough purchased the inland parcel, he and Anderson met on the driveway. McCullough asked what the term "exclusive" meant as used in the easement. CP at 47. Anderson said only he could use the easement and McCullough did not have a right to use it.

McCullough hired an attorney who contacted Anderson's attorney about the easement. In a letter, Anderson's attorney told McCullough's attorney that, under *Johnson v. Lake Cushman Maintenance Co.*, 5 Wn. App. 2d 765, 425 P.3d 560 (2018), the easement would either be found unambiguous or "extrinsic evidence [would] exclude [McCullough's] use of the easement." CP at 273. Anderson's attorney also sent part of the first draft of the easement, part of the final draft of the easement, and an email from the attorney who drafted the easement. In the email, the drafting attorney said that "the grantor [would] not have a right to use the easement." CP at 277. McCullough's attorney later withdrew.

McCullough hired a second attorney. Anderson's attorney sent McCullough's new attorney a letter stating, "I assume Mr. McCullough shared with you my letter addressed to his former attorney[.] My client's legal position remains unchanged." CP at 278. Referencing *Johnson*, the letter added, "It was specifically negotiated between Grantor and Grantee that Grantor would not have use of the easement." *Id.*

McCullough then sued Anderson. He sought a declaratory judgment quieting title to the inland parcel "free-and-clear of any claim" that the easement excluded him from the easement area. CP at 9. He sought an order that the easement did not exclude him from the easement area as long as his use did not interfere with Anderson's rights of ingress and egress. And he sought a restraining order or injunction prohibiting Anderson from excluding him from the easement area.

Anderson moved for summary judgment, arguing that the easement was unambiguous and that even if it were ambiguous, indisputable extrinsic evidence showed that he and the estate intended the easement to exclude everyone except the waterfront property's owner. McCullough opposed Anderson's summary judgment motion, declaring that before he purchased the inland

parcel, neither his real estate broker, the estate's listing agent, the title company, "[n]or anyone else [disclosed] that the recorded easement was intended or otherwise operated to exclude [him] from the easement area." CP at 103. However, Anderson submitted a declaration stating that he was "never contacted by Mr. McCullough or any agent of his" about "what the term 'exclusive' meant as used in the recorded easement." CP at 46. The estate's listing agent said the same in their declaration.

During the summary judgment hearing, McCullough briefly argued for the first time that there was a genuine issue of material fact concerning the easement's physical dimensions. McCullough contended there was "some contradiction as to what area was actually even intended to have the easement." Verbatim Rep. of Proc. (VRP) (Aug. 19, 2022) at 24. Neither Anderson nor the trial court addressed this brief line of argument.

At the end of the hearing, the trial court granted Anderson's motion for summary judgment. The trial court concluded that the use of the word "'exclusive'" was ambiguous as to whether it meant that McCullough was excluded from using the easement area. *Id.* at 39. However, looking to the extrinsic evidence, the trial court concluded that there was no genuine issue of fact because the evidence showed the parties intended to create "an exclusive easement for the grantee to the exclusion of the grantor." *Id.* at 40.

Anderson moved for an award of attorney fees and costs under RCW 4.84.185. That statute allows a court to award attorney fees and costs if the court finds that an action "was frivolous and advanced without reasonable cause." RCW 4.84.185. At a hearing, the trial court said it would grant the motion. The trial court explained that "the *Johnson* case existed before" McCullough purchased the inland parcel, and *Johnson* clearly provided that if there was ambiguity around

whether the term "'exclusive'" in an easement excluded the grantor, a court would look to the intent of the parties that made the agreement. VRP (Sept. 30, 2022) at 24. The trial court added that McCullough was on notice about *Johnson* at the time of the purchase, so there was "no reason why" he could not have inquired about the easement, given that any ambiguity would be resolved by looking to the intent of the parties who drafted the easement. *Id.* at 25.

The trial court's order awarding attorney fees and costs stated that based on the parties' pleadings and "[l]etters and email exchanges transmitted to McCullough's attorneys" before the filing of the lawsuit, the court found that McCullough's "lawsuit was frivolous and advanced without reasonable cause." CP at 349-50.

McCullough appeals the grant of summary judgment and award of attorney fees and costs.

## ANALYSIS

### I. EASEMENT

We review a trial court's grant of summary judgment de novo. *Johnson*, 5 Wn. App. 2d at 776. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

### A. Easement Exclusivity

McCullough argues that the trial court erred when it granted Anderson's summary judgment motion because the easement "on its face contemplates use of the [d]riveway by the servient owner." Br. of Appellant at 12. McCullough explains that "construction of the [easement] as a whole precludes an interpretation" that would exclude him "from using his own property." *Id.*

at 13. And he contends that even if the easement were ambiguous as to whether it excluded him, Anderson was "a 'maker' of the easement document," so Anderson should not have been able to "rely upon extrinsic evidence . . . to cure an ambiguity he helped create, to the detriment of a subsequent purchaser of the servient estate." *Id.* at 24. McCullough also contends that he did not have a duty to inquire about the exclusivity provision.

We conclude that while *Johnson* held that the term "exclusive" is ambiguous, considering this entire easement in context, the easement unambiguously excludes even the owner of the servient estate.

"'An easement is a property right separate from ownership that allows the use of another's land without compensation.'" *Johnson*, 5 Wn. App. 2d at 778 (internal quotation marks omitted) (quoting *Hanna v. Margitan*, 193 Wn. App. 596, 606, 373 P.3d 300 (2016)). An easement burdens "the servient estate," and a "'successor in interest to the servient estate takes the estate subject to [that] easement[] if the successor had actual, constructive, or implied notice of the easement.'" *Id.* (internal quotation marks omitted) (quoting *Hanna*, 193 Wn. App. at 606).

Washington law recognizes the validity of an easement that excludes the grantor. *Id.* at 783. In determining whether an easement excludes the grantor, we discern "the original parties' intent" by examining "the instrument as a whole." *Rainier View Ct. Homeowners Ass'n v. Zenker*, 157 Wn. App. 710, 720, 238 P.3d 1217 (2010). "If the plain language of the instrument is unambiguous, then we will not consider extrinsic evidence of intent." *Johnson*, 5 Wn. App. 2d at 783. But if the instrument is ambiguous, "we may consider extrinsic evidence of the parties' intent." *Id.* "A written instrument is ambiguous if 'its terms are uncertain or capable of being

understood as having more than one meaning.'" *Id.* (internal quotation marks omitted) (quoting *Rainier View*, 157 Wn. App. at 720).

We held in *Johnson* that "the mere inclusion of the phrase 'for the exclusive use'" in an instrument does not unambiguously create an easement that excludes the grantor. *Id.* at 784. Rather, the phrase suggests three possibilities: the grant of an easement to the grantee "to the exclusion of all others, except the grantor;" the grant of an easement "excluding all others, including the grantor;" or "the grant of a fee simple estate." *Id.* at 785. Because the phrase "'for the exclusive use'" in an easement "is susceptible to conflicting interpretations," that phrase by itself is ambiguous. *Id.* at 784-85. Even so, in this case, reading the entire easement in context shows that the document unambiguously excluded McCullough from accessing the driveway. The easement stated, "Grantor desires to grant to Grantee a perpetual, exclusive easement for ingress, egress, and utilities, over and across" the driveway. CP at 75.[2] In addition to using the phrase "exclusive easement," the easement provided that the grantee would bear sole "responsibility for the construction, repair, and maintenance of the" driveway. *Id.* And the easement assigned responsibility for indemnification almost entirely to the grantee. These provisions are consistent with an exclusive easement allowing access only for the grantee because only the grantee is responsible for repair, maintenance, and liability arising from use of the easement. Unlike the instrument in *Johnson*, which contained only a statement that the easement was "'for the exclusive use'" of the grantee, 5 Wn. App. 2d at 783, the language of the easement agreement here contained

---

[2] Although the easement in *Johnson* used the phrase "'for the exclusive use,'" 5 Wn. App. 2d at 784, the easement in this case granted an "exclusive easement." CP at 75. We note that Black's Law Dictionary defines the term "exclusive easement" as an "easement that the holder has the sole right to use." BLACK'S LAW DICTIONARY 645 (11th ed. 2019).

other indications of the parties' intent to create an easement that excluded the servient property's owner.

Because reading the entire easement in context shows that the easement unambiguously excluded McCullough from the driveway, we need not consider extrinsic evidence of the parties' intent. We affirm the trial court's order granting summary judgment to Anderson.

B.  Easement Dimensions

McCullough argues that there is a genuine issue of material fact concerning the physical dimensions of the easement. Below, McCullough raised this issue only briefly in oral argument on summary judgment. We decline to consider this argument.

"On review of an order granting or denying a motion for summary judgment," we "consider only evidence and issues called to the attention of the trial court." RAP 9.12. Raising an issue during oral argument without raising it in a written motion or response generally does not properly bring the issue to the trial court's attention. *See White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 168-69, 810 P.2d 4 (1991). And "'[p]assing treatment of an issue . . . is insufficient to merit judicial consideration.'" *Cf. In re Guardianship of Ursich*, 10 Wn. App. 2d 263, 278, 448 P.3d 112 (2019) (declining to address a party's assignment of error to the trial court's denial of its motion for reconsideration) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)).

Here, we will not consider McCullough's argument regarding the easement's physical dimensions because he did not properly call the issue to the trial court's attention. McCullough did not make any claims relating to the easement's dimensions in his complaint, and he never sought to amend the complaint. Although McCullough briefly raised the issue verbally at the summary judgment hearing, he did not present legal argument related to this issue or raise the issue in his

memorandum opposing Anderson's summary judgment motion. He offered no facts to support his claim that there is a genuine dispute about the physical dimensions of the easement. Nor did he offer any legal argument to support his contention that the court should rely on anything other than the legal description recited in the easement. The trial court lacked the opportunity to rule on the issue with the benefit of argument from both sides. And McCullough did not attempt to provide support for his assertion by raising it in a motion for reconsideration.

Under these circumstances, we conclude that McCullough did not properly raise this issue before the trial court, and therefore, we decline to address it on appeal.

## II. ATTORNEY FEES AND COSTS UNDER RCW 4.84.185

McCullough argues that the trial court abused its discretion in awarding Anderson attorney fees and costs under RCW 4.84.185. McCullough contends that his "lawsuit was not frivolous but was instead supported by rational, [good-faith] arguments based in both law and fact." Br. of Appellant at 43. Anderson responds that the "law on interpreting easements was settled and the facts clear before McCullough filed suit," pointing out that his attorney sent McCullough's attorneys information about the applicable law and the extrinsic evidence showing the intent of the parties to the easement. Br. of Resp't at 47. We agree with McCullough and reverse the trial court's order awarding Anderson attorney fees and costs.

"We review a trial court's award under RCW 4.84.185 for an abuse of discretion." *Dave Johnson Ins. v. Wright*, 167 Wn. App. 758, 786, 275 P.3d 339 (2012). "A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds." *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 218, 304 P.3d 914 (2013).

Under RCW 4.84.185, a court "may, upon written findings by the judge that the action . . . was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including" attorney fees. For example, in *Hanna*, Division Three held that the trial court abused its discretion by requiring the Hannas to pay an opposing party's attorney fees and costs, reasoning that the Hannas' argument had "some statutory support" and "was supported by a rational argument on the law and facts." 193 Wn. App. at 614. The Hannas had unsuccessfully argued that "once a short plat is recorded, a party cannot alter the subdivision by granting a private easement without formally amending the short plat." *Id.* at 607. Although the court disagreed, it explained that under the statute the Hannas cited in support of their argument, "an easement that is not depicted on a short plat is arguably an 'alteration.'" *Id.* at 614.

Here, the trial court abused its discretion when it awarded Anderson attorney fees and costs. McCullough's argument below, which was similar to his argument on appeal, centered around the idea that *Johnson* was not directly applicable to his case. Specifically, he argued that extrinsic evidence should not be used to determine the meaning of the term "'exclusive'" in the easement because his status as a successive owner made him different, analyzing the duty of a prospective buyer to inquire about the scope of an easement. CP at 179. Although McCullough's argument was unsuccessful, like the statutory argument in *Hanna*, the argument was rational. McCullough directly addressed our recent holding in *Johnson* and then pointed out ways in which the easement burdening his property was different from the easement in that case. Attorneys frequently argue in good faith for a different result when facts are different. McCullough also reasonably argued that the courts should account for his status as a subsequent purchaser who was not directly involved

13

in negotiation of the easement. Even though we conclude that the entire easement in context unambiguously excludes the owner of the servient estate, we also conclude that the trial court abused its discretion in awarding attorney fees and costs under RCW 4.84.185 to Anderson because McCullough's arguments were not frivolous.

## ATTORNEY FEES ON APPEAL

Anderson argues that attorney fees "are warranted for [his] efforts to respond to McCullough's frivolous appeal." Br. of Resp't at 54. RAP 18.9(a) allows us to grant a respondent attorney fees and costs when the appellant "files a frivolous appeal." An appeal is not frivolous where it results in an appellate court reversing a trial court's order awarding attorney fees and costs under RCW 4.84.185. *Biggs v. Vail*, 119 Wn.2d 129, 138, 830 P.2d 350 (1992). For the same reasons we reverse the trial court's award of attorney fees and costs to Anderson, we do not award Anderson attorney fees and costs on appeal.

## CONCLUSION

We reverse the award of attorney fees and costs under RCW 4.84.185. We otherwise affirm.

No. 57283-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Lee, J.

Price, J.