# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MATTHEW A. JOHNSON AND AMY K. JOHNSON, husband and wife, | No. 50113-9-II |
| Appellants, | |
| MARK SCHOMAKER AND KATHERINE SCHOMAKER, husband and wife, | |
| Plaintiffs, | |
| v. | |
| LAKE CUSHMAN MAINTENANCE CO., a Washington non-profit corporation, | PART PUBLISHED OPINION |
| Respondent. | |

LEE, A.C.J. — Matthew and Amy Johnson[1] brought an action against their homeowners'
association, Lake Cushman Maintenance Company (LCMC), to quiet title to a park and road
easement LCMC held in their property, and for trespass, waste, nuisance, and timber trespass.
LCMC counterclaimed to quiet title in fee or to an exclusive easement.

LCMC moved for summary judgment on the Johnsons' quiet title, trespass, waste, timber
trespass, and nuisance claims. The superior court granted LCMC's motion for summary judgment
in part and dismissed the Johnsons' claims for trespass, waste, timber trespass, and quiet title. The

---

[1] Mark and Katherine Schomaker were also parties to this lawsuit in the superior court, but they
did not file a notice of appeal.

superior court also quieted title in LCMC to an exclusive easement for park and road purposes, free and clear of any claim for use of the property by the Johnsons, except in their capacity as LCMC members. The superior court further enjoined the Johnsons, their heirs, executors, agents, and assigns from asserting any right, title, or interest in the exclusive easement, and from interfering with LCMC's use and enjoyment of the easement. The Johnsons appeal.

We hold that the superior court did not err in dismissing the Johnsons' quiet title, trespass, waste, timber trespass, and injunction claims. However, we also hold that the superior court erred in quieting title in LCMC to an exclusive easement free and clear of any claim for use by the Johnsons because LCMC failed to show that there was no genuine issue of material fact that their easement was intended to be an exclusive easement. Because the superior court erred in quieting title in LCMC to an exclusive easement, the superior court also erred in enjoining the Johnsons, their heirs, executors, agents, and assigns from asserting any right, title, or interest in or to the exclusive easement quieted in LCMC.

In the unpublished portion of this appeal, we hold that the superior court erred in striking the portion of Schomaker's affidavit related to payment of taxes on the property, but it did not err in striking the other portions of the submitted affidavits.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

FACTS

A.    OWNERSHIP OF THE LAND

The City of Tacoma owns a large tract of land adjoining the Cushman project reservoir.[2] The City decided to make the existing Cushman project reservoir available for recreational use and to privately develop the tracts of land on or near the reservoirs.

In March 1966, the City entered into a 99 year lease with Lake Cushman Company [LCC], a private developer.  The lease provided LCC the right to use the waters of the lakes for recreational purposes, including boating, swimming, and fishing.  The lease also provided that it was "mutually understood by the parties hereto that [LCC] may sublet any part or portion of the lands hereby leased for any period or periods within the lease term upon such sublease forms first approved by the City Attorney of Tacoma."  Clerk's Papers (CP) at 142.

In June, LCC formed Lake Cushman Maintenance Company [LCMC], a non-profit corporation, for the express purpose of developing, repairing, maintaining, and operating the land that LCC had leased from the City of Tacoma.  LCMC would also levy and collect dues or maintenance fees from the sublessees of the property within the subdivisions of Lake Cushman, as established by the LCC.  LCC created LCMC to "act as a homeowners' association for the operation, maintenance and repair of the common areas of the development."  CP at 293

In February 1983, LCC created an "easement for the exclusive use of the Lake Cushman Maintenance Co., its successors and assigns, for park and road purposes over . . . [t]hat portion of

---

[2] Located on the Olympic Peninsula, the Cushman Project "is a hydroelectric generating facility . . . consisting of two dams on the north fork of the Skokomish River, two reservoirs, two powerhouses and transmission lines.  It supplies about 5 percent of the electrical needs of Tacoma Power's 160,000 customers."  TACOMA PUBLIC UTILITIES, http://www.mytpu.org/file_viewer.aspx?id=700 (last visited Aug. 13, 2018).

Lot 62 in the Plat of Lake Cushman No. 14." CP at 151. The easement was recorded in the Mason County Auditor's Office under Auditor's File No. 414987.

In May, LCC subdivided Lot 62 into four smaller lots (Lots 1-4) under short plat 1260. The legal description for Lots 1-4 of short plat 1260 stated that Lot 1 was "subject to an easement in favor of Lake Cushman Maintenance Co. for road and park purposes[,] recorded under Auditor's File No. 414987." CP at 156. The legal descriptions for Lots 1-4 in short plat 1260 was recorded under Mason County Auditor's File No. 415052.

In October, LCC subleased Lot 1 to Stephen and Carol Brandt. The lease agreement described the land leased as "[t]hat portion of Lot 62 in the Plat of Lake Cushman No. 14, recorded in Volume 9 of Plats, Pages 17 through 19, records of Mason County, Washington described as follows: See Exhibit "A" for legal description." CP at 94. Exhibit A was a copy of the legal description for Lot 1 in short plat 1260.

In March 2014, Matthew and Amy Johnson obtained a leasehold interest in Lot 1 of the short platted Lot 62 through an assignment of lease. The assignment of lease referenced short plat 1260, provided a legal description of Lot 1 in short plat 1260, and stated that the land assigned was "subject to easements, restrictions, covenants, reservations, agreements, and conditions of record." CP at 168 (capitalization omitted). The assignment of lease also included a list of special exceptions and included the "[e]asement, including its terms, covenants and provisions as disclosed by instrument; Recorded: May 12, 1983 Recording No: 414987 For: park and road purposes Affects: portion of said premises." CP at 170. The special exceptions under the assignment of lease also referenced the "[c]ovenants, conditions, restrictions, recitals, disclaimers, notices, agreements [and/or] easements as contained in Short Plat No. 1260." CP at 171. And

included in the assignment of lease was a survey depicting Lot 1 of short plat 1260. The survey showed the boundaries of the easement "FOR PARK AND ROAD PURPOSES A.F. NO. 414987 GRANTED PRIOR TO SHORT PLAT NO. 1260." CP at 173. In accepting the assignment of lease, the Johnsons acknowledged that they "accept all of the terms, covenants, conditions and agreements of the assigned Lease" and "agree to be bound thereby." CP at 167.

B.      LITIGATION BETWEEN THE JOHNSONS AND LCMC

        1.       The Johnsons File Complaint to Quiet Title

Shortly after subleasing Lot 1, the Johnsons began to notice trash and debris accumulating on the park easement located on their property. The debris mostly consisted of contraband, including alcohol containers, makeshift pipes, and needles. According to the Johnsons, every time they removed the contraband from the park on their property, more would appear. The Johnsons also began to hear noise and "late night partying." CP at 212. The Johnsons believed that these "trespassers" were responsible for the needles and drug paraphernalia continuously left on their property. CP at 212. According to the Johnsons, LCMC employs security to monitor the park until 5 PM. After security leaves for the day, "a rush of cars . . . come pouring in" to use the park after hours. CP at 214.

Frustrated with LCMC's response to their complaints, the Johnsons began posting "no trespassing" signs throughout the park easement area. CP at 213. LCMC removed these signs. The Johnsons also erected a gate and several hedges, which LCMC claimed limited access to the park easement.

On June 23, 2015, the Johnsons filed a complaint to quiet title to the park easement, claiming that the easement was void. The Johnsons sought an order declaring the park easement

void, arguing that LCC and LCMC were so intertwined and related that the park easement was a grantor easement and, thus, invalid. The Johnsons also sought an injunction prohibiting LCMC and its members from using the park easement "in any manner." CP at 318. The Johnsons also brought causes of action against LCMC for trespass, waste, nuisance, and timber trespass.

LCMC filed an answer, asserting that its successors, and assigns were the benefited "owners of a fee title or an exclusive easement" over and across the park located on the Johnsons' property.[3] CP at 311. LCMC also raised several affirmative defenses, including that LCMC had "established fee title" to the park through adverse possession, had established a prescriptive easement, or alternatively had an implied easement to the property. CP at 312.

LCMC also filed a counterclaim, asserting that LCC had granted LCMC "an exclusive easement which included right to exclude the plaintiffs as owners of the servient estate from using the property in any way." CP at 313. LCMC further asserted that its

> exclusive easement is an unusual interest in land amounting to almost a conveyance of the fee title to [LCMC]. The grant of an exclusive easement to [LCMC] conveyed unfettered rights to [LCMC] as owner of the easement to use that easement for purposes specified in the grant to the exclusion of all others, including the plaintiffs.

CP at 313.

---

[3] The City of Tacoma, the true fee title owner of the property, was never made a party to this lawsuit.

In its prayer for relief, LCMC requested a decree "adjudging" LCMC "to be the owner" of the park "in fee or exclusive easement, quieting its title thereto and barring [the Johnsons] . . . from asserting any interest therein superior to the title of [LCMC]." CP at 314. LCMC also requested an injunction permanently prohibiting the Johnsons from interfering with LCMC's quiet and peaceful enjoyment of the park property.

2.      LCMC's Motion for Summary Judgment

On October 13, 2016, LCMC filed a motion for summary judgment, seeking dismissal of the Johnsons' quiet title, trespass, waste, and timber trespass claims. LCMC argued that the Johnsons' claim that the easement was a grantor easement was without merit because LCC is a privately held, for-profit corporation, while LCMC is a non-profit homeowners' association. LCMC also argued that the easement "clearly and unambiguously" created an exclusive easement because the language states the easement was " 'for the exclusive use of the Lake Cushman Maintenance Co..' " CP at 179 (emphasis omitted). According to LCMC,

> Lake Cushman Co. clearly and unambiguously created an exclusive easement for LCMC to use the southerly portion of Lot 1, Short Plat 1260 for park purposes. Plaintiffs therefore have no right to use of any of the easement area except as members of LCMC and subject to LCMC rules and regulations for member use.

CP at 182-83.

In response, the Johnsons argued that LCMC and LCC were the same entity because (1) LCMC was formed to administer recreational opportunities to members of LCC and LCMC, and (2) the trustees of both companies were the same. The Johnsons further argued that LCMC did not have the right to exclude them from using the easement because they were the servient estate. The Johnsons also argued that the easement was "clearly to be used solely for ingress and egress to the boat launch and viewpoint." CP at 132.

7

In support of their arguments, the Johnsons provided a declaration of Matthew Johnson, which stated that "[a] portion of our property that LCMC has been using for the road and viewpoint is clearly not being used only for residential purposes, which is contrary to the original covenants." CP at 48. The Johnsons also provided a declaration of Mark Schomaker, who had leased a lot at Lake Cushman for approximately 24 years. Schomaker stated that to his knowledge, LCMC had not paid any taxes on the portion of his property containing the easement.

The Johnsons also filed a declaration of Gary Christman, who has lived within the subdivision of Lake Cushman developed by LCC since 1979. According to Christman, an area on the easement that LCMC claimed had been used as a parking lot, "had only ever been used for the owner access." CP at 113.

Finally, the Johnsons filed a declaration of Bonnie Bunmaster, a "lot owner" of Lake Cushman since 1982. CP at 117. According to Bunmaster, "[t]he only portion of the Johnson/Schomaker property that has ever been used or maintained is the road, and the path to the viewpoint." CP at 118. Bunmaster also claimed to frequent the viewpoint regularly and had never seen any other LCMC members or anyone else use the hillside near the area. Bunmaster further asserted that the "lower flat area North of the road has never been used by the membership. This has always been a driveway for the owners of the Johnson/Schomaker property." CP at 118.

3.      Ruling on Summary Judgment Motion

The superior court granted LCMC's motion for summary judgment in part, dismissing the Johnsons' claims for trespass, waste, timber trespass, and quiet title.[4] The court also ordered that,

---

[4] The superior court denied LCMC's motion for summary judgment on the Johnsons' nuisance claim. The Johnsons' remaining nuisance claim was later dismissed by stipulated order.

"Lake Cushman Maintenance Company's title in and to an exclusive easement for park and road purposes . . . is quieted in [LCMC] free and clear of any claim for use of the property by plaintiffs, except for any right of use related to their membership in Lake Cushman Maintenance Company." CP at 14. The superior court further ordered that, "Plaintiffs and their heirs, executors, agents and assigns are perpetually enjoined from asserting any right[,] title[,] or interest in or to the exclusive easement herein quieted in defendant and are further enjoined from interfering with defendant's use and enjoyment of said easement." CP at 14.

The Johnsons appeal.

ANALYSIS

The Johnsons assign error to certain findings of fact and conclusions of law entered by the superior court. The Johnsons also assign error to the superior court's failure to make certain factual findings.

On review of summary judgment, we review de novo whether there are any genuine issues as to any material fact and whether the moving party is entitled to judgment as a matter of law. CR 56(c). Therefore, " '[f]indings of fact and conclusions of law are not necessary on summary judgment and, if made, are superfluous.' " *Nelson v. Dep't of Labor & Indus.*, 198 Wn. App. 101, 109, 392 P.3d 1138 (2017) (quoting *Concerned Coupeville Citizens v. Town of Coupeville*, 62 Wn. App. 408, 413, 814 P.2d 243, *review denied*, 118 Wn.2d 1004 (1991)), *review denied*, 190 Wn.2d 1025 (2018). Therefore, we do not address the Johnsons' assignments of error to specific findings of fact and conclusions of law on summary judgment.

The Johnsons also assign error to the superior court's grant of summary judgment in favor of LCMC on the Johnsons' claims for quiet title, waste, trespass, and timber trespass. The

9

Johnsons further assign error to the superior court's order quieting title in LCMC to an exclusive easement, free and clear of any claim for use of the property by the Johnsons, and permanently enjoining the Johnsons or any of their successors and heirs from asserting right, title, or interest to the exclusive easement. We consider each in turn and hold that the superior court did not err in dismissing the Johnsons' quiet title, waste, trespass, and timber trespass claims on summary judgment, but hold that the superior court erred in granting summary judgment in favor of LCMC on LCMC's quiet title claim; erred in permanently enjoining the Johnsons from using the property except in their capacity as LCMC members; and erred in enjoining the Johnsons, their heirs, and successors from ever asserting any right, title, or interest in or to the exclusive easement.

A.      LEGAL PRINCIPLES

As noted above, we review the grant of summary judgment de novo. *Verdon v. AIG Life Ins. Co.*, 118 Wn. App. 449, 452, 76 P.3d 283 (2003). Thus, we engage in the same inquiry as the superior court. *LaCoursiere v. Camwest Dev., Inc.*, 181 Wn.2d 734, 740, 339 P.3d 963 (2014).

Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Winston v. State Dep't of Corr.*, 130 Wn. App. 61, 63, 121 P.3d 1201 (2005). Like the trial court, we consider all facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party and will uphold a grant of summary judgment only if, from all the evidence, reasonable minds could reach but one conclusion. *Id.* at 63-64.[5]

---

[5] As addressed below, in the unpublished portion of this opinion, we hold that the trial court erred in striking the portion of Schomaker's declaration regarding payment of taxes on his property. Therefore this evidence is still before us on review.

The moving party in a summary judgment motion bears the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this initial showing, then the inquiry shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). If the opposing party fails to make a showing sufficient to establish a genuine issue of material fact, then summary judgment is appropriate. *Young*, 112 Wn.2d at 225.

B.      THE JOHNSONS' QUIET TITLE CLAIM

The Johnsons appear to argue that the superior court erred in dismissing their quiet title[6] claim to the park easement when the court granted LCMC's summary judgment motion because there remained a genuine issue of material fact as to the validity of the easement. We disagree.

" 'An easement is a property right separate from ownership that allows the use of another's land without compensation.' " *Hanna v. Margitan*, 193 Wn. App. 596, 606, 373 P.3d 300 (2016) (quoting *M.K.K.I., Inc. v. Krueger*, 135 Wn. App. 647, 654, 145 P.3d 411 (2006), *review denied*, 161 Wn.2d 1012 (2007)). This interest in land is a burden to the servient estate. *Olson v. Trippel*, 77 Wn. App. 545, 554, 893 P.2d 634, *review denied*, 127 Wn.2d 1013 (1995). Because someone cannot have an easement in his or her own property, an easement is extinguished when the dominant and servient estates are commonly owned.[7] *M.K.K.I., Inc.*, 135 Wn. App. at 659. " '[A]

---

[6] The Johnsons title their complaint as a "Complaint to Quiet Title," but seek ejectment of LCMC from the park easement area. CP at 315.

[7] In their complaint, the Johnsons referred to this situation as a "grantor easement." CP at 318. Even though the Johnsons are correct in asserting that an easement cannot have a common grantor

successor in interest to the servient estate takes the estate subject to the easements if the successor had actual, constructive, or implied notice of the easement.' " *Hanna*, 193 Wn. App. at 606 (quoting *810 Props. v. Jump*, 141 Wn. App. 688, 699, 170 P.3d 1209 (2007)).

Termination of an easement is disfavored under the law. *Id.* When an easement is expressly granted, " '[t]he extent and duration of the easement is to be determined from the terms of the grant.' " *Id.* (quoting *Zobrist v. Culp*, 95 Wn.2d 556, 561, 627 P.2d 1308 (1981)). An easement is only extinguishable in certain situations, such as when the easement holder releases the easement by instrument that complies with the statute of frauds, the owner of the servient estate uses the easement adversely, the easement is abandoned, or the dominant and servient estates merge. *Id.* at 606-07.

Here, the Johnsons alleged that the easement was void because LCC (the grantor) and LCMC (the grantee) were so intertwined and related that the grant constituted a "grantor easement." CP at 318. In moving for summary judgment, LCMC presented evidence that LCMC was a non-profit corporation created in 1966 for the purpose of managing and maintaining the common areas of the Lake Cushman Development. LCMC also submitted evidence that LCC was incorporated as a for-profit Washington corporation in 1965, and that LCC had developed the Lake Cushman Development and formed LCMC to act as a homeowners' association for the operation, maintenance, and repair of common areas of the development.

This evidence showed that LCC and LCMC were formed as separate corporate entities with distinctly separate purposes. As a result, LCMC, as the defendant, met its initial burden of

---

and grantee, no Washington court has referred to such conveyance as a "grantor easement." *E.g.*, *M.K.K.I., Inc.*, 135 Wn. App. at 659; *Coast Storage Co. v. Schwartz*, 55 Wn.2d 848, 853, 351 P.2d 520 (1960) (holding that "[o]ne cannot have an easement in his own property.")

showing that there was no genuine issue as to any material fact as to whether LCC and LCMC were essentially the same company, which was an essential element to the Johnsons' claim that the easement was void. The burden then shifted to the Johnsons to produce evidence sufficient to establish the existence of an element essential to their claim that the easement was void because it constituted a "grantor easement." *Young*, 112 Wn.2d at 225.

On appeal, the Johnsons argue that there still remained issues of material fact as to whether LCC and LCMC were truly separate entities because LCMC's articles of incorporation provided that LCMC " 'shall at all times hereafter be a joint and mutual association of the above named incorporators.' " Br. of Appellant at 31 (emphasis omitted) (quoting CP at 61). The Johnsons also argue that a fact finder should have decided whether to disregard the corporate veil here because a reasonable fact finder could have found that LCC created LCMC with the intent to evade a duty with respect to taxes and their leaseholders.

However, these are not the same arguments that the Johnsons raised at summary judgment below. In their response to LCMC's motion for summary judgment, the Johnsons argued that there was evidence that LCC and LCMC were the same entity based on the same individual signing for both LCC and LCMC in the document granting the easement. At oral argument, the Johnsons argued that there was evidence LCC and LCMC were not separate because the trustees of the companies were the same individuals. The Johnsons' only reference to piercing the corporate veil on summary judgment was at oral argument when they responded to LCMC's argument that it would be inappropriate to pierce the corporate veil here. To this point, the Johnsons' sole argument was, "I think the record's clear, at least at this stage, that there is sufficient evidence to carry the

claim of the alter ego or the disregarded entity theory forward." Verbatim Report of Proceedings (VRP) (Nov. 14, 2016) at 23.

"On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12. An argument that was neither pleaded nor argued to the superior court on summary judgment cannot be raised for the first time on appeal. *Sourakli v. Kyriakos, Inc.*, 144 Wn. App. 501, 509, 182 P.3d 985 (2008), *review denied*, 165 Wn.2d 1017 (2009). Because the Johnsons never made an argument to the superior court based on the stated purpose of LCMC in its articles of incorporation, we do not consider this argument on appeal. *Id.* Similarly, we do not consider the Johnsons' argument on appeal that a fact finder could have found that LCC had created LCMC for the purpose of evading its tax duties because the Johnsons never raised this argument below.[8] *Id.*

As to the arguments that the Johnsons did raise on summary judgment, the Johnsons fail to provide citation to any authority supporting their argument that two separate corporations are considered the same entity if a single individual signs for both companies. The Johnsons also fail to provide citation to legal authority supporting their argument that commonality of board members between two corporations renders those two corporations essentially the same entity. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle*

---

[8] Similarly, on appeal, the Johnsons' raise an argument that the easement was not validly created by short plat and that LCC never obtained written permission from the City of Tacoma to create the easement. However, the Johnsons never raised either of these arguments in its response to LCMC's motion for summary judgment. The Johnsons also failed to raise this issue at oral argument. Therefore, we do not consider these arguments on appeal. *Sourakli*, 144 Wn. App. at 509.

*Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).  Therefore, we hold that the Johnsons failed to make a showing sufficient to establish that LCC and LCMC were the same entity, which was an essential element to their claim that the easement here constituted a "grantor easement."

Because the Johnsons' quiet title claim was premised on their assertion that the easement was void as a "grantor easement" and none of the recognized circumstances under which an easement can be terminated was present, summary judgment was appropriate.  We affirm the superior court's grant of summary judgment in favor of LCMC in dismissing the Johnsons' quiet title claim.

C.      THE JOHNSONS' TRESPASS, TIMBER TRESPASS, AND WASTE CLAIMS

The Johnsons also assign error to the superior court's dismissal of their trespass, timber trespass, and waste claims.  The Johnsons' sole argument is that the superior court erred in failing to make findings of fact or conclusions of law with respect to dismissal of these claims.  According to the Johnsons, the superior court "abused its discretion in summarily dismissing these claims with no basis for such dismissal."  Br. of Appellant at 45.

As an initial matter, review of an order granting summary judgment is de novo, not for an abuse of discretion.  *Verdon*, 118 Wn. App. at 452.  Also, as explained above, the superior court's findings of facts on a summary judgment order are superfluous and thus are not a basis to assign error on appeal.  *Nelson*, 198 Wn. App. at 109.  Because the Johnsons fail to provide any other argument, or cite to legal authority or relevant portions of the record, in challenging the superior court's dismissal of these claims, we do not consider this assignment of error.  RAP 10.3(a)(4), (6).

D.       LCMC's Quiet Title Claim

The Johnsons argue that the superior court erred in (1) granting LCMC's counterclaim to quiet title on summary judgment, (2) permanently enjoining the Johnsons from using the easement except in their capacity as LCMC members, and (3) permanently enjoining the Johnsons, their successors, and heirs from ever asserting any right, title, or interest in the exclusive easement.   We agree.

In response to the Johnsons' complaint, LCMC brought a counterclaim to quiet title, arguing that LCMC held an "exclusive easement" to the park.  CP at 313-14.  In its motion for summary judgment, LCMC argued that there was no genuine issue as to any material fact because the "validity of the deed and plat dedication and the scope of the easement are decided by this court as a matter of law.  The deed and plat dedication are clear.  The exclusive nature of the easement is clear."  CP at 187.  LCMC also argued at summary judgment that allowing the Johnsons "use of the park property for any purpose other than using the park as a member community would substantially interfere with this easement."  CP at 183.  LCMC solely relied on the language in the easement document stating that LCC "hereby declare[s] an easement for the exclusive use of the Lake Cushman Maintenance Co., its successors and assigns, for park and road purposes."  CP at 151.  According to LCMC, the language "exclusive use" created an unambiguous exclusive easement for LCMC, and therefore, the Johnsons had "no right to use of any of the easement area except as members of LCMC and subject to LCMC rules and regulations for member use."  CP at 182-83.

In determining the original parties' intent to an easement, we consider the instrument as a whole. *Rainier View Court Homeowners Ass'n  v. Zenker*, 157 Wn. App. 710, 720, 238 P.3d 1217

16

(2010), *review denied*, 170 Wn.2d 1030 (2011). If the plain language of the instrument is unambiguous, then we will not consider extrinsic evidence of intent. *Id.* If an ambiguity exists in the instrument, then we may consider extrinsic evidence of the parties' intent, including the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct. *Id.* A written instrument is ambiguous if " 'its terms are uncertain or capable of being understood as having more than one meaning.' " *Id.* (quoting *Murray v. W. Pac. Ins. Co.*, 2 Wn. App. 985, 989, 472 P.2d 611 (1970)).

Case law addressing exclusive easements in Washington is limited. Nonetheless, the limited case law shows that exclusive easements are recognized under Washington law. *See Hayward v. Mason*, 54 Wash. 649, 652, 104 P. 139 (1909) (holding that the circumstances surrounding the grant of an easement to use a waterway did not show that the easement was intended to be an exclusive easement); *Hoffman v. Skewis*, 35 Wn. App. 673, 675-76, 668 P.2d 1311 (1983) (rejecting the grantee's claim that the grantor conveyed an exclusive easement by including the term "private" in the granting instrument), *review denied*, 101 Wn.2d 1001 (1984); *Butler v. Craft Eng'g. Constr. Co.*, 67 Wn. App. 684, 690, 843 P.2d 1071 (1992) ("There is no language in the easement indicating that it was to be an exclusive easement or which would affirmatively restrict the rights of the owners and purchasers of the undivided fee interest.").

No published Washington case has addressed whether the use of the term "exclusive" in a granting instrument unambiguously conveys an exclusive easement. However, states that have addressed this issue have held that the mere use of the word "exclusive" in a conveying instrument does not, in and of itself, create an exclusive easement. *See Latham v. Garner*, 105 Idaho 854,

17

857, 673 P.2d 1048 (1983); *Apitz v. Hopkins*, 863 N.W.2d 437, 440 (Minn. Ct. App. 2015) (adopting *Latham's* reasoning).

In *Latham*, the Idaho Supreme Court held that the use of the word "exclusive" did not unambiguously create an easement precluding the use of the servient estate. 105 Idaho at 857. The *Latham* court held that even with the term "exclusive," the instrument was ambiguous because it could be interpreted as (1) the grant of an easement to the grantee to the exclusion of all others, except the grantor; or (2) the grant of an easement right of way excluding all others, including the grantor; or, (3) as the grant of a fee simple estate to the grantee. *Id.* Thus, the instrument was ambiguous because it was still reasonably subject to conflicting interpretations. *Id.*

We adopt the *Latham* court's reasoning and hold that that the mere inclusion of the phrase "for the exclusive use" in the conveying instrument did not unambiguously provide LCMC an exclusive easement in the park. The inclusion of the phrase "for the exclusive use of the Lake Cushman Maintenance Co." could be interpreted as (1) the grant of an easement to LCMC to the exclusion of all others, except the grantor; or (2) the grant of an easement right of way excluding all others, including the grantor; or (3) the grant of a fee simple estate to LCMC. Because this term is susceptible to conflicting interpretations, it is ambiguous.[9]

Because an ambiguity exists in the conveying instrument, we consider extrinsic evidence of the parties' intent, including the circumstances of the property when the easement was

_____

[9] LCMC argues that providing evidence of intent would be problematic because the easement was created more than 34 years ago, and has outlasted the lifetimes of both agents of the grantor and grantee. Therefore, evidence concerning the circumstances of the conveyance would be both "unreliable and unobtainable." Br. of Resp't at 19. LCMC's inability to provide evidence establishing intent does not sway this court in interpreting the deed as ambiguous.

conveyed, and the practical interpretation given the parties' prior conduct. *Rainier View Court Homeowners*, 157 Wn. App. at 720. Here, LCMC provided no extrinsic evidence of the parties' intent, but instead solely relied on the use of the term "exclusive" in the conveying document. CP at 182-83. Therefore, as the moving party, LCMC failed to meet its burden showing that there was no genuine issue as to any material fact that LCC intended to convey an exclusive easement to LCMC to the exclusion of the Johnsons as the possessor of the servient estate, and LCMC was not entitled to judgment quieting title as a matter of law.

We reverse the superior court's summary judgment order granting LCMC's quiet title claim. Because LCMC has not established that it possesses an exclusive easement in the park to the exclusion of the Johnsons as the possessor of the servient estate, we also reverse the superior court's injunction prohibiting the Johnsons from using their property as the servient estate owners and the injunction prohibiting the Johnsons, their heirs, agents, and assigns from asserting title or interest in the easement.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

A majority of the panel having determined that only the foregoing portion of this opinion will be published in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

No. 50113-9-II

FACTS

In response to LCMC's motion for summary judgment, the Johnsons submitted several declarations, including the declarations of Matthew Johnson and Mark Schomaker. In his declaration, Matthew asserted:

> A portion of our property that LCMC has been using for the road and viewpoint is clearly not being used only for residential purposes, which is contrary to the original covenants. Over the past few years, LCMC has turned the park into a business. They are now selling passes that members can purchase that allow non-members access to our property (which includes the easement). There are a number of rentals that take advantage of this for the clients that purchase accommodations. In 2015 alone, LCMC issued 703 annual passes, 155 3-day passes, 359 1-day passes, 142 3-day boat launch passes, 221 1-day boat launch passes. The board has also given passes to employees of Tacoma Power, the fire department and who knows how many other non-members. This has increased traffic and use well beyond that which was contemplated in the easement, and has gotten to a point there [sic] LCMC cannot control the behavior of the users, thus resulting in a loss of enjoyment of, and damage to, our property.

CP at 48.

The Johnsons also filed a declaration of Mark Schomaker, who had leased a lot at Lake Cushman for approximately 24 years. In his declaration, Schomaker asserted:

> Additionally, if LCMC really thought the property was a park wouldn't they comply with their own Articles of Incorporation? In Dave Curley's Declaration he copied the Articles of Incorporation, in which paragraph 10 states that LCMC will pay all taxes and assessments for parks and public areas. I do not believe they have paid any taxes on our lot in the past and I know they haven't paid taxes on it since our purchase. Paragraph 19 also states that they are not to operate the parks at a profit. They currently charge for passes to non-members park use (allowing non-members to use the easement area is also an expansion of the easement).

CP at 123-24.

20

LCMC filed a motion to strike portions of Matthew and Schomaker's declarations quoted above,[10] arguing that Matthew's declaration was speculative and made without personal knowledge as required by CR 56(e)[11] and that Schomaker's declaration was irrelevant. The superior court granted portions of LCMC's motion to strike. The superior court struck all but the first three sentences of the paragraph of Matthew's declaration. With regard to Schomaker's declaration, the superior court struck the entire paragraph as irrelevant, including Schomaker's statement, "I do not believe [LCMC] ha[s] paid any taxes on our lot in the past and I know they haven't paid taxes on it since our purchase." CP at 123-24.

ANALYSIS

The Johnsons assign error to the superior court's order striking portions of Matthew and Schomaker's declarations. We hold that the superior court did not err in striking the portion of Matthew's declaration. However, we hold that the superior court did err in striking the portion of Schomaker's declaration regarding his knowledge of tax payments on the property. Thus, we consider the stricken portion of Schomaker's declaration regarding taxes in reviewing the summary judgment order.

---

[10] LCMC also moved to strike other portions of the Johnson and Schomaker declarations, as well as other submitted declarations, which the superior court granted. However, the Johnsons only assign error to the portion of the superior court's order striking the two paragraphs of Matthew and Schomaker's declarations quoted above.

[11] Under CR 56(e), affidavits supporting and opposing summary judgment "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

No. 50113-9-II

A.    LEGAL PRINCIPLES

We review all trial court rulings made in conjunction with a summary judgment motion de novo. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998); *Simmons v. City of Othello*, 199 Wn. App. 384, 390-91, 399 P.3d 546 (2017) (reviewing the trial court's evidentiary rulings on the defendant's motion to strike portions of affidavits plaintiff submitted de novo). Applying de novo review "is consistent with the requirement that the appellate court conduct the same inquiry as the trial court." *Folsom*, 135 Wn.2d at 663.

An affidavit supporting or opposing a summary judgment motion must be based on personal knowledge, set forth such facts as would be admissible in evidence, and "show affirmatively that the affiant is competent to testify to the matters stated therein." CR 56(e). This requires a party to set forth specific facts to meet his or her burden at summary judgment. *Suarez v. Newquist*, 70 Wn. App. 827, 832, 855 P.2d 1200 (1993). "[S]peculation, argumentative assertions, opinions and conclusory statements will not defeat the [summary judgment] motion." *Id.*

B.    MATTHEW'S DECLARATION

The Johnsons argue that the superior court erred in striking the statements in Matthew's declaration about the increasing number of park passes LCMC issued in recent years and that LCMC could not control its users' behavior.[12] We disagree.

---

[12] The superior court struck other portions of Matthew's declaration, but the Johnsons only challenge the portion of the order striking Matthew's references to the park passes and statements that LCMC could not control users' behavior.

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." ER 602. And courts will not consider legal conclusions asserted in a summary judgment motion. *Simmons*, 199 Wn. App. at 392.

Here, Matthew stated that the portion of his property that LCMC had been using for road and viewpoint purposes was "clearly not being used only for residential purposes, which is contrary to the original covenants."[13] CP at 48. Matthew then stated how many passes the LCMC board had issued over the past few years and claimed that many of these passes were given to non-LCMC members. Finally, Matthew asserted that "LCMC cannot control the behavior of the users, thus resulting in a loss of enjoyment of, and damage to, our property." CP at 48. In making these statements, Matthew provided no foundation as to his personal knowledge of the number of passes LCMC had issued nor did he provide any foundation as to his knowledge of who was using the passes.

The Johnsons argue that these statements were based on "the personal knowledge Mr. Johnson has as an LCMC member, further supported by an exhibit LCMC submitted in its moving papers." Br. of Appellant at 22. However, Matthew never stated in his declaration that he was an LCMC member, nor did he state that as a member of LCMC he was aware of the number of annual passes the board distributed to members and nonmembers. In fact, in the paragraphs proceeding these statements, Matthew failed to even establish that the property he referred to was developed by LCC, leased by LCC, or managed by LCMC. His only references to the location of his leasehold interest was, "We wanted property that would allow our kids, and someday grandkids,

---

[13] The superior court did not strike this statement from Matthew's declaration.

to experience the lake and wooded area around Cushman. We fell in love the second we looked onto the property in which we currently have a leasehold interest." CP at 47.

Therefore, Matthew failed to provide adequate foundation in his declaration to establish that the property in which he held a leasehold interest was leased by LCC or managed by LCMC. Even had Matthew established these facts, he provided no foundation that he was a member of LCMC or that the members of LCMC had personal knowledge of the specific number of park passes the LCMC board distributed to members and nonmembers each year. Therefore, the superior court did not err in striking the challenged portion of Matthew's affidavit.[14]

The superior court also properly found that Matthew's statement that LCMC could not control the behavior of its users was outside of his personal knowledge, as required by CR 56(e). The Johnsons argue that these statements "reflect[ed] personal knowledge based on Mr. Johnson's experience as an owner and user of the Property." Br. of Appellant at 22. However, the Johnsons failed to provide any foundation for how, as a user of the property, Matthew had personal knowledge as to what was within LCMC's control with regard to park users. Thus, we hold that the superior court did not err in striking this portion of Matthew's affidavit.

C.    SCHOMAKER'S DECLARATION

Again, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." ER 602. Further,

---

[14] Evidence of the number of annual park passes issued by the LCMC board was before the superior court through the declaration of David Curley, which was submitted by LCMC, along with documentation detailing the number of annual passes the LCMC board distributed. Therefore, even though we hold that the superior court did not err in striking Matthew's references to the annual park passes, this information remains in evidence before this court through Curley's declaration and accompanying documents.

evidence which is not relevant is inadmissible. ER 402. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

Here, the superior court ruled that Schomaker's statements were speculation, not based on personal knowledge, and specifically stated to be his personal beliefs. As in Matthew's affidavit, Schomaker failed to provide any foundation as to his knowledge of the annual park passes LCMC issued to non-members. Further, in the first two sentences of the challenged statements, Schomaker fails to offer testimony at all, but instead poses a question and then makes an argument based on another witness's testimony.

Nonetheless, Schomaker does have personal knowledge as to whether LCMC paid taxes on his property from the time he acquired his leasehold interest in the property. This information could have a tendency to make a fact regarding the scope and historical use of the easement more or less probable than it would be without this evidence. Therefore, Schomaker's statement that LCMC had not, to his knowledge, paid taxes from the time Schomaker acquired his leasehold interest was relevant. *See* ER 401. Therefore, we hold that the superior court erred in striking this one sentence from the paragraph at issue in Schomaker's declaration. The superior court properly struck the remainder of the paragraph.

## CONCLUSION

The superior court did not err in dismissing the Johnsons' quiet title, trespass, waste, timber trespass, and injunction claims. The superior court also did not err in striking portions of Matthew's and Schomaker's affidavits.

No. 50113-9-II

However, the superior court erred in quieting title in LCMC to an exclusive easement free and clear of any claim for use by the Johnsons because LCMC failed to show that there was no genuine issue of material fact that their easement was intended to be an exclusive easement. Because the superior court erred in quieting title in LCMC to an exclusive easement, the superior court also erred in enjoining the Johnsons, their heirs, executors, agents, and assigns from asserting any right, title, or interest in or to the exclusive easement quieted in LCMC. The superior court further erred in striking the portion of Schomaker's affidavit related to payment of taxes on the property. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.

26