IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROD L. SMITH and BECKY R. SMITH, | ) | No. 36091-1-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DWIGHT GOEHNER and | ) | |
| CAROL GOEHNER, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, C.J. — The Smiths appeal after the trial court partially granted summary judgment and the jury rejected their remaining trespass claims. They argue the trial court erred in partially granting summary judgment, and erred again in denying admission of one of their proposed exhibits. Determining that the Smiths' arguments were not properly preserved, we affirm.

FACTS

On April 14, 2015, Rod Smith and Becky Smith filed this lawsuit against Dwight Goehner and Carol Goehner for trespass and nuisance. The Smiths alleged that the Goehners trespassed onto their property in 2013 by installing a segment of polyvinyl chloride (PVC) irrigation line within their property along a different route than the original metal irrigation pipe. The Smiths requested the court order the Goehners to remove the PVC line and pay trespass and nuisance damages.

About one year later, on April 15, 2016, the Smiths sent a letter to the Goehners asking them to fix the PVC line because it had broken and was flooding their property. The Smiths wanted the PVC line and its debris removed, and for the Goehners to install a new line across a suitable location. The Smiths informed the Goehners that they had laid out markers where the line could be installed and asked the Goehners to draft a proper easement agreement.

On April 29, 2016, the Goehners's attorney sent an e-mail to the Smiths confirming his clients' agreement to relocate the line as marked and remove the PVC debris. He also attached a draft easement document for the Smiths' review, copying the Goehners since they had not yet reviewed the draft. The Smiths replied by e-mail on the same day indicating that the easement document was mostly acceptable and that they were willing to resolve the dispute. The Smiths requested that the line be installed by professional excavators and buried three feet deep. The Smiths also requested $800 to resolve the trespass claim against the Goehners. Later that same day, the Goehners directly e-mailed the Smiths, notifying them that a work crew would remove the broken PVC line and debris the following day.

On April 30, 2016, the Smiths reiterated their rejection of any excavation, installation, or surveying not done by professionals. The Smiths asserted that the

Goehners would not be allowed on the property until the trespass claim was resolved.

On May 2, 2016, the Goehners' attorney e-mailed the Smiths that there was only a small section of PVC line that needed to be installed on the Smiths' property and that the new line would follow the flagged location. The attorney also attached a finalized easement document incorporating changes requested by the Smiths. The Goehners insisted on finalizing and signing the document first, rather than waiting for the survey, because the survey could take weeks or months and the Goehners' crop would be a total loss without water. The Goehners rejected the Smiths' offer to resolve the trespass claim for $800.

The same day, the Smiths responded that they had appointments with a surveyor and excavation company to get the work started. The Smiths also contacted a professional, Keegan Bray, and received a quote from him to excavate and lay the new PVC line. The Smiths showed Mr. Bray stakes along the ground, indicating where they wanted the irrigation line to be relocated.

The Smiths then e-mailed the Goehners that they contacted two professionals who could excavate, install, and survey the location of the new line so to get the easement document signed. The Smiths added, if the Goehners wished to install the new line that week, the Goehners would have to comply with the Smiths' terms.

The Smiths listed those terms as: (1) all work would be done at the Goehners' cost, (2) the line would be installed by professionals, and (3) the workers must let the Smiths know before they accessed the Smiths' property to perform the work. The Smiths provided the Goehners with the quotes from the professionals.

On May 3, 2016, the Goehners answered the complaint and generally denied the allegations of trespass and asserted an affirmative defense that the 2013 PVC line was located where it had historically been located. The Goehners asserted the Smiths agreed to allow the Goehners to move the line to a different area on the Smiths' property, but the Smiths had made unreasonable demands and imposed unreasonable conditions. The Goehners also filed a motion for a temporary restraining order (TRO) to restrain the Smiths from directly or indirectly interfering, impeding, interrupting, or preventing the Goehners from connecting their irrigation line to receive water.

At the TRO hearing, the court recognized the parties may have come to an agreement that could be completed by the end of the week. The Smiths affirmed that the e-mail on May 2, 2016, contained their ultimate goals. The contractor was prepared to start work immediately, the Smiths were willing to show the Goehners exactly where to excavate the line, and the Smiths spoke to a surveyor who could perform the survey after

4

the line was installed.  Because of a likely solution between the parties, the court denied the motion for a TRO.

On May 3, 2016, Mr. Goehner contacted Mr. Bray and met him on site to review the proposed irrigation line location.  The stakes were in the same location the Smiths showed Mr. Bray previously.  Mr. Bray performed the excavation and installation work between May 4 and May 6, 2016, along the staked course.  One or both of the Smiths were on site throughout Mr. Bray's work.  Neither stated that the line was in the wrong place.  Mr. Goehner paid Mr. Bray.  Later in May, the Goehners had the line surveyed so an accurate legal description could be included in the easement document.  The Goehners' lawyer then sent the proposed easement to the Smiths' lawyer, but never heard back, despite repeated attempts to contact him.

On August 1, 2017, the Goehners filed a motion for a TRO and preliminary injunction because the Smiths had threatened to cut off their irrigation water through the relocated PVC line.  The Goehners asserted that in May 2016, they had relocated the irrigation line along the course marked by the Smiths, they had paid for the excavation, installation, and survey work, and they had finalized the easement document prepared at their expense.  The Goehners also asserted they provided the easement document to the

Smiths but the Smiths never signed it.  The trial court issued a preliminary injunction

forbidding the Smiths from disrupting the Goehners' irrigation water.

On September 22, 2017, the Goehners filed an amended answer and affirmative

defenses to the Smiths' complaint, and a counterclaim against to the Smiths.  The

Goehners' counterclaim asserted that e-mails between the parties in April and May 2016

constituted an agreement, and that the Goehners had performed their obligations under

the agreement.  In their answer to the counterclaim, the Smiths denied the existence of

any sort of settlement agreement.  They contended the agreement was only for a

temporary relocation of the water line, not a permanent one.  On February 16, 2018, the

Smiths filed an amended complaint for common law and statutory trespass.

On March 1, 2018, the Goehners moved for summary judgment, asserting that they

had complied with the Smiths' May 2, 2016 e-mailed terms, that the trial court should

order the Smiths to sign the easement document, and it should also dismiss the Smiths'

trespass claims.  In their summary judgment response, the Smiths reiterated that the

relocation was intended to be only temporary, and that the Goehners had failed to perform

the agreement within a week.

On March 29, 2018, the trial court heard argument.  The trial court concluded that

no reasonable trier of fact could find that the Smiths' terms in the e-mails could be

construed as a temporary resolution. However, it also concluded that the Goehners did

not perform because they failed to relocate and survey the line within one week, accepting

at face value the Smiths' assertion that the one-week time frame was an essential

component of the parties' agreement.

On April 5, 2018, the Goehners filed a motion for reconsideration. In their motion,

they argued that time was not an essential component to the agreement, because time was

only essential to *them* so they could deliver water to their orchard. They also argued that

they performed their obligations as quickly as feasible and within a reasonable time. The

Smiths opposed the Goehners' motion for reconsideration.

On April 13, 2018, the trial court heard argument. During a colloquy with the

court, the Smiths acknowledged that they had marked where the new line should be

relocated, and that Mr. Bray installed the line at that location by May 6, 2016—during the

same week of the May 2, 2016 e-mailed offer.

The trial court partially granted the Goehners' motion for reconsideration. In

doing so, the court reasoned:

> So, let's say that the Court accepts [the Goehners'] position that . . . a
> solution was negotiated that then [the Goehners] took steps, you know, let's
> view it as an oral contract and [the Goehners] took steps to carry out their
> end of the agreement by . . . paying to have a line installed in the place
> where the Smith's had indicated, that the Smith's had the opportunity to
> view that and see that being installed and then [the Goehners] paid for a

surveyor to survey that and reduced it to an easement, but the easement never got signed.

. . . .

It appears to the Court that the parties entered into an oral contract regarding placement of a new waterline and the oral agreement included that it was going to be in a place that was staked out by the Smiths and that the Goehners needed to get it surveyed and then that's where the easement would be.

Pretrial Report of Proceedings (PRP) at 55-56, 79 (emphasis added).

The court granted partial summary judgment as to the location of the line and for an easement to be granted for that location. The court scheduled a hearing for presenting it with a proposed written easement, and requested supplemental briefing on whether the form of easement was a jury question.

At the next hearing, instead of presenting a proposed easement document, the Goehners argued that the agreement was a global agreement, and the Smiths' trespass claims should also be dismissed. The trial court disagreed. It then determined that the phrasing of the easement was a question of law for the court, reasoning: "[T]he Court's decision to enforce a CR 2A agreement and the enforcement of a CR 2A agreement is not something that would properly be determined by a jury." PRP at 126.

The Smiths' trespass claims, which the Goehners had refused to settle for $800, proceeded to trial. At trial, the Smiths attempted to admit their proposed exhibit 11, a 43-page document. The Smiths insinuated that the document contained admissions that the

line installed in 2013 was not located along the historical line. The Goehners objected.

After examining the proposed exhibit, the trial court noticed it contained settlement

discussions, and refused under ER 408 to admit it. The Smiths then reduced the 43-page

submission to 2 pages. Because the 2 pages still contained settlement discussions, the

trial court refused to admit the reduced submission.

The jury returned a verdict finding that the Goehners were not liable to the Smiths

on their trespass claims. The Smiths timely appealed.

## ANALYSIS

### A.    SUMMARY JUDGMENT

The Smiths argue the trial court erred when it granted the Goehners' motion for

summary judgment. Specifically, the Smiths argue: (1) no enforceable CR 2A agreement

was reached by the parties, (2) the e-mail exchanges lack the formality of a deed, and

(3) the Goehners did not establish sufficient partial performance to avoid application of

the statute of frauds.

Before we can even address these arguments, we must determine whether they

were preserved for appeal. "An argument that was neither pleaded nor argued to the

superior court on summary judgment cannot be raised for the first time on appeal."

*Johnson v. Lake Cushman Maint. Co.*, 5 Wn. App. 2d 765, 780, 425 P.3d 560 (2018);

*Sourakli v. Kyriakos, Inc.*, 144 Wn. App. 501, 509, 182 P.3d 985 (2008); *see also*

RAP 2.5(a) (Appellate courts generally will not review a claim of error not raised in

the trial court.). Here, none of the three arguments the Smiths raise on appeal were

ever pleaded or argued in the trial court. We conclude these arguments may not be

raised on appeal for the first time.

We note that the basis of the trial court's summary judgment ruling was its

determination that the parties had an oral contract. In a later hearing, the trial court did

confusingly refer to CR 2A. But this reference does not permit us to ignore the basis of

the trial court's ruling, that the parties had an oral contract.[1]

B.　EXCLUSION OF EVIDENCE AT TRIAL

The Smiths contend the trial court erred by not admitting a statement contained in

their proposed exhibit 11. The statement, a short sentence written by the Goehners'

attorney, seemingly admits that the 2013 PVC line was located along a different route

than the historical line.

---

[1] The trial court twice described the parties' agreement as an oral contract. We believe the trial court misspoke. The trial court determined that the parties had a contract because the Smiths' May 2, 2016 e-mail constituted an offer that the Goehners accepted by performance. An offer that is accepted by performance is a unilateral contract. *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 35-36, 330 P.3d 159 (2014).

The problem with the Smiths' argument is that they did not seek to admit only this statement. Rather, they first sought to admit the entire 43-page document, and then a 2-page submission, both of which contained settlement discussions. The Smiths do not contend that the trial court erred in concluding that both submissions contained settlement discussions and were inadmissible under ER 408. Instead, they ask us to reverse the trial court for refusing to admit a short statement contained in the 2-page document. Because the Smiths never requested the trial court to admit only this short statement, the issue has not been preserved for our review. RAP 2.5(a).

C. ATTORNEY FEES

Both parties request attorney fees, if successful on appeal. As the prevailing party, the Goehners seek an award of attorney fees under RAP 18.9 for defending an appeal that is frivolous. RAP 18.9 permits an appellate court to order a party or counsel who files a frivolous appeal to pay the harmed party compensatory damages, including reasonable attorney fees. Under Washington law, "an appeal is frivolous if, considering the entire record and resolving all doubts in favor of the appellant, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that it is so devoid of merit that there is no possibility of reversal." *Ramirez v. Dimond*, 70 Wn. App. 729, 734, 855 P.2d 338 (1993). All doubts regarding frivolity are resolved in favor

11

of the appellant. *Camer v. Seattle Sch. Dist. No. 1*, 52 Wn. App. 531, 540, 762 P.2d 356 (1988).

Here, the Smiths raised a debatable issue as to why the parties' e-mails are inadequate to form a CR 2A stipulation. Partly for a procedural reason, we did not reach this issue. But because the issue was debatable, we decline the Goehners' request to impose attorney fee sanctions against the Smiths.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

_Siddoway, J._
Siddoway, J.

_Pennell, J._
Pennell, J.